IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHELLE BELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:10-cv-00338-D |
| | ) | |
| vs. | ) | |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PETITION FOR ATTORNEY'S FEES AND COSTS**

Plaintiff, MICHELLE BELL ("Plaintiff"), by and through her attorneys, Weisberg & Meyers, LLC, hereby submits her Petition for Attorney's Fees and Costs. In support thereof, Plaintiff states as follows:

**I.  INTRODUCTION.**

Plaintiff, did not initiate any business with Defendant, MIDLAND CREDIT MANAGEMENT, INC., ("Defendant"). Rather, Defendant obtained Plaintiff's information from a third party creditor to Plaintiff, and for its own profit, began communicating with Plaintiff in an effort to collect an alleged debt. Defendant's contacts and communications violated Plaintiff's rights under the federal Fair Debt Collection Practices Act. As such, Plaintiff retained Weisberg & Meyers, LLC to protect her consumer rights.

Shortly after Defendant rejected Plaintiff's pre-litigation requests for relief, Plaintiff filed her original complaint against Defendant on April 2, 2010.

Plaintiff frequently made settlement demands throughout the course of litigation,

Exhibit 5

the first of which was made three (3) months before she filed her original complaint. The parties ultimately agreed to settle the case for $1,500.00 plus reasonable attorney's fees and costs incurred. This agreement was reflected in a judgment entered by this court on August 4, 2010. Ever since the parties reached this agreement, the parties have been unable to reach a resolution as to the issues of Plaintiff's attorney's fees and costs.

## II. PROCEDURAL HISTORY.

On April 2, 2010, Plaintiff filed her complaint against Defendant alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), U.S.C. §1692 *et seq*. (See Exhibit 1: April 2, 2010 Complaint). On May 7, 2010, Defendant filed its Answer to Plaintiff's Complaint. (See Exhibit 2: May 7, 2010 Answer).

On May 18, 2010, Plaintiff's counsel sent Defendant a correspondence to inquire about Defendant's availability for an Initial Conference. (See Exhibit 3: May 18, 2010 Correspondence). Plaintiff's counsel sent a follow up e-mail to Defendant on May 24, 2010. (See Exhibit 4: May 24, 2010, 7:38am Correspondence). Defendant replied to Plaintiff's e-mail with a list of potential dates for the Initial Conference. (See Exhibit 5: May 24, 2010, 8:57am Correspondence). Plaintiff's counsel sent a reply to Defendant's e-mail, expressing his desire to expedite the case. (See Exhibit 6: May 24, 2010, 11:54am Correspondence).

On May 27, 2010, Plaintiff's counsel sent Defendant a draft Joint Status Report and Discovery Plan. (See Exhibit 7: May 27, 2010 Correspondence). For over a month, Defendant failed to respond to Plaintiff's correspondence. On June 29, 2010, Plaintiff's counsel sent Defendant a follow up e-mail, asking Defendant to review the draft Joint

Status Report. (See Exhibit 8: June 29, 2010, 6:55am Correspondence). Defendant sent Plaintiff's counsel a reply promising to review the Joint Status Report and to schedule the Initial Conference. (See Exhibit 9: June 29, 2010, 6:59am Correspondence). On July 2, 2010 Plaintiff's counsel once again attempted to schedule the Initial Conference. (See Exhibit 10: July 2, 2010 Correspondence).

On July 16, 2010 the Parties held the Initial Conference. Later that day, Plaintiff's counsel sent Defendant a second draft of the Joint Status Report and Discovery Plan for Defendant to review. (See Exhibit 11: July 16, 2010 Correspondence). When Defendant did not respond, Plaintiff's counsel sent Defendant a follow up e-mail, asking Defendant to review the Joint Status Report. (See Exhibit 12: July 23, 2010 Correspondence). On July 28, 2010, the Parties finally filed a Joint Status Report and Discovery Plan. (See Exhibit 13: Joint Status Report and Discovery Plan).

### III. SETTLEMENT HISTORY.

On January 7, 2010, Plaintiff sent a written notice of her potential claim to Defendant. (See Exhibit 14: January 7, 2010 Notice). When Defendant did not respond, Plaintiff sent a follow up letter dated January 29, 2010. (See Exhibit 15: January 29, 2010 Correspondence). On February 25, 2010, Defendant responded to Plaintiff's correspondence with an offer to settle the case for $1,500.00 inclusive of all attorney's fees and costs. (See Exhibit 16: February 25, 2010 Correspondence). Plaintiff made a counter demand of $2,900.00 in an e-mail dated February 26, 2010. (See Exhibit 17: February 26, 2010, 11:31am Correspondence). Defendant replied with a $2,000.00 settlement offer. (See Exhibit 18: February 26, 2010, 3:04pm Correspondence).

In another attempt to resolve this matter, Plaintiff made a settlement demand of $3,800.00 inclusive of attorney's fees and costs on June 9, 2010. (See Exhibit 19: June 9, 2010 Correspondence). On July 28, 2010, Defendant made a counter offer of $2,500.00. (See Exhibit 20: July 28, 2010 Correspondence). Plaintiff rejected Defendant's counter offer and offered to settle the case for $4,500.00 on the grounds that Plaintiff's attorney's fees had increased significantly since her last settlement demand. (See Exhibit 21: July 29, 2010 Correspondence). On August 2, 2010, Plaintiff expressed her intention to recover all attorney's fees and costs incurred in the case. (See Exhibit 22: August 2, 2010, 3:39pm Correspondence). Later that day, Plaintiff confirmed her receipt of Defendant's draft Offer of Judgment in the amount of $1,500.00, plus attorney's fees incurred to date. (See Exhibit 23: August 2, 2010, 4:16pm Correspondence). Plaintiff also expressed her intention to file a Notice of Acceptance of Defendant's Offer of Judgment. (See Exhibit 23). Defendant then requested the amount of costs that Plaintiff was claiming and the lodestar calculation for Plaintiff's attorney's fees. (See Exhibit 24: August 2, 2010, 4:39pm Correspondence). Plaintiff provided Defendant with a settlement demand in connection with Plaintiff's attorney's fees incurred up to that point. (See Exhibit 25: August 2, 2010, 4:46pm Correspondence).

In an August 3, 2010 Correspondence, Defendant declined to compensate Plaintiff for the entire amount of her attorney's fees. (See Exhibit 26: August 3, 2010, 4:01pm Correspondence). Defendant instead offered to pay an amount that covered less than half of the attorney's fees incurred by Plaintiff. (See Exhibit 26). Plaintiff rejected Defendant's offer and notified Defendant of her intention of file a Fee Petition. (See

Exhibit 27: August 3, 2010, 4:10pm Correspondence).

On August 4, 2010, Defendant filed its offer of Judgment in the amount of $1,500.00 plus attorneys incurred to date. (See Exhibit 28: Offer of Judgment). Plaintiff filed her Notice of Acceptance of Defendant's Offer of Judgment. (See Exhibit 29: Notice of Acceptance). On August 4, 2010, this court entered a Judgment in favor of Plaintiff in the amount of $1,500.00 plus accrued statutory costs and attorney's fees incurred to date. (See Exhibit 30: August 4, 2010 Judgment).

As the prevailing party, and pursuant to the mandatory fee-shifting provision included in the FDCPA at 15 U.S.C. § 1692k, Plaintiff files the instant petition for attorney's fees and costs.[1]

## IV.  THE PLAIN LANGUAGE OF THE FDCPA MANDATES THAT PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND COSTS.

> 15 U.S.C. §1692k(a) provides in pertinent part:
>
> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is **liable** to such person in an amount equal to the sum of --
>
> \*   \*   \*
>
> (3) in the case of any successful action to enforce the foregoing liability, **the costs of the action, together with a reasonable attorney's fee as determined by the court.**

15 U.S.C. §1692k(a) (emphasis added).

"Given the structure of [15 U.S.C. §1692k], attorney's fees should not be

---

[1] Plaintiff's counsel agreed to represent Plaintiff purely on an hourly rate basis, in accord with the fee shifting provision included in the FDCPA. Plaintiff's counsel does not, nor did Plaintiff's counsel ever, represent Plaintiff on a contingency basis.

construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F. 2d 107, 113 (3rd Cir. 1991) (reiterating that several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted); *see also French v. Corporate Receivables, Inc.*, 489 F. 3d 402 (1st Cir. 2007) (finding that an award of attorney's fees to successful plaintiffs under the FDCPA is obligatory); *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389 (W.D. N.Y. 2009) (holding that once a violation of the FDCPA is found, an award of attorney's fees and costs is mandatory); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp 61 (E.D. N.Y., 1994) (noting that the structure of the fee shifting provision included in the FDCPA mandates attorney's fees as the means of fulfilling congressional intent that the act be enforced by private attorneys general).

Discussing the mandatory nature of the fee shifting provision included in the FDCPA, the Ninth Circuit detailed that "[t]he reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F. 3d 973, 978 (9th Cir. 2008); *see also Tolentino v. Friedman*, 46 F. 3d 645, 651-652 (7th Cir. 1995); *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). The Seventh Circuit, in similar fashion, explained that the public as a whole has an interest in the vindication of statutory rights, and Congress' specific intent under the FDCPA was to facilitate an individual plaintiff's ability to pursue an action where the economic burden of costs and fees would otherwise preclude

enforcement. *Tolentino*, 46 F. 3d at 652. Quoting the United States Supreme Court, the Seventh Circuit additionally made clear: "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms." *Id.*

Thus, the FDCPA mandates that the recovery of attorney's fees and costs in connection with successful prosecution of an action under the FDCPA is integral to the success of the policy goals underlying the FDCPA. Plaintiff prevailed in this matter and should be awarded reasonable attorney's fees and costs as determined by this Court.

V. **PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEY'S FEES AND COSTS TO PLAINTIFF**

The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692 *et seq*. Congress in fact announced in enacting the FDCPA: "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* The purpose of the FDCPA, as stated by Congress, is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* The fee shifting

provision included in the FDCPA enables consumers to vindicate their personal rights while benefitting society in general, resulting in greater deterrence of fraudulent and deceptive business practices. *See Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643, 653 (S.D. N.Y. 2006).

Difficulty in enforcing statutes like the FDCPA, and its state law counterparts, by private attorneys general arises in part because, unlike personal injury actions, at the commencement of litigation the potential for recovery is not clear. *Bowers v. Transamerica Title Insurance Company*, 675 P.2d 193, 204 (Wash. 1983). What's more, the amount in controversy is usually too small to induce an attorney to commence litigation on a percentage contingency. *Id.* As well, litigation costs are an expense of doing business for corporations, whereas the average consumer doesn't have the economic staying power to engage in protracted litigation, thereby providing larger companies a unique advantage over consumers. *Chrysler Corporation v. Maiocco*, 209 Conn. 579, 552 A. 2d 1207 (Conn. 1989).

Accordingly, "the purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997); *see also Ford Motor Co. v. Mayes*, 575 S.W. 2d 480, 488 (Ky. Ct. App. 1978); *Grove v. Huffman*, 262 Ill. App.3d 531, 539 (Ill. Ct. Ap. 1994) ("To hold otherwise would discourage injured parties from seeking relief...and would be counterproductive to the [congressional] purpose..."). By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of

protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

Lacking a sufficient award of attorney's fees and costs, an entry of judgment for the consumer would not make the consumer whole, as the average consumer would be unable to pay her attorney's fees, creating a deterrent for private attorneys to pursue this type of action. Fee shifting provisions are put in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs. *Id.* at 539.

VI. **AN AWARD OF ATTORNEY'S FEES AND COSTS UNDER THE FDCPA IS TO BE BASED UPON ACTUAL TIME EXPENDED, AND NOT THE AMOUNT OF RECOVERY.**

Enforcement of a plaintiff's rights under the FDCPA through the courts is prohibitively expensive. Awarding fees based upon actual time expended, rather than amount of recovery, makes economically feasible the pursuit of remedies by consumers in state and federal courts. There exists a strong presumption that the lodestar amount represents an adequate and proper fee award. *Hensley v. Eckhart*, 461 U.S. 424, 533 (1983); *see also City of Riverside v. Rivera,* 477 U.S. 561, 576, (1986) ("[R]easonable attorney's fees ... are not conditioned upon and need not be proportionate to an award of money damages."); *Lewis v. Kendrick,* 944 F.2d 949, 957 (1st Cir.1991) ("[T]he fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it.").

Also significant, particular to the lodestar calculation, the hourly rate for each advocate is to be based on the prevailing rate in the community for that individual's level

of legal skill and experience. *Blum v. Stenson*, 465 U.S. 886 (1984). The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases.
>
> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993),
>
> "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino*, 46 F. 3d at 652.

The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir.1988)

In most cases filed pursuant to the FDCPA an award of attorney's fees to a prevailing party greatly exceeds the damage award. *See Cope v. Duggins*, 203 F. Supp 2d 650 (E.D. La. 2002; *Silva v. National Telewire Corp.*, 2001 U.S. Dist. LEXIS 20717

(D. N.H. 2001) (awarding attorney's fees in the amount of $59,288.50 and costs and expenses in the amount of $5,338.45); *Norton v. Wilshire Credit Corp.*, 36 F. Supp 2d 216 (D. N.J. 1999).

## VII. THE RATES SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE AND COMMENSURATE WITH THEIR EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION.

A reasonable fee is judged against the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. Plaintiff seeks an award of attorney's fees in the amount of $4431.50, for 21.8 hours of attorney, law clerk, paralegal, and legal assistant time at hourly rates ranging from $80.00 per hour to $295.00 per hour. (See Exhibit 31: Statement of Services) Specifically, Plaintiff seeks to recover the following.

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Alex Weisberg (2010)[2] | 8.8 | $295.00 | $2,596.00 |
| Alex Weisberg (2009) | 1.0 | $265.00 | $265.00 |
| Marshall Meyers | .8 | $295.00 | $236.00 |
| Joshua Trigsted | 1.1 | $175.00 | $192.50 |
| Jeanette Soto, Paralegal | .3 | $120.00 | $36.00 |
| Kimberly Larson, Paralegal | 1.4 | $150.00 | $210.00 |
| Jessica DeCandia, Paralegal | 1.2 | $120.00 | $144.00 |
| Termain Davis, Paralegal | 2.0 | $120.00 | $240.00 |

---

[2] Over the course of this year long action, Plaintiff's attorneys' rates were increased slightly on January 1, 2010, as is customary and reasonable in the industry

| Paul Zelnick, Law Clerk | 4.8 | $100.00 | $480.00 |
| Jon Worthy, Legal Assistant | .4 | $80.00 | $32.00 |

The hourly rates of Plaintiff's attorneys delineated in Plaintiff's Statement of Services are commensurate with the experience and training of each employee at Weisberg & Meyers, LLC. These rates are also supported by the 2007 Consumer Law Attorney Fee Survey, the U.S. Attorney's "Laffey Matrix," as well as the affidavits of other consumer advocates. Numerous recent FDCPA cases have also approved rates of at least $300.00 per hour for experienced attorneys who were experts in the field of consumer protection law. *See e.g. Dowling v. Litton Loan Servicing, LP*, 320 Fed. Appx. 442 (6th Cir. 2009) ($300 hourly rate fell within range of reasonableness for litigators of counsel's skill level and experience in that community), *Larsen v. JBC Legal Group, P.C.* 588 F. Supp 2d 360 (E.D. N.Y. 2008) as amended, (Dec. 18, 2008) (hourly rate of $300 was reasonable where attorney had practiced law for 17 years, focused on consumer law for 7 years, and had significant experience in consumer protection litigation), *Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954 (D. Minn. 2008) ($300 per hour for one attorney and $325 per hour for a more experienced attorney were reasonable where both were experts in FDCPA litigation), *Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002) (the reasonable hourly rate for attorneys fees under the FDCPA is the prevailing market rate for attorneys of comparable experience in cases of similar complexity). In fact, according to the Seventh Circuit, paying counsel in an FDCPA case at rates *lower* than those that they could obtain in the marketplace is *inconsistent* with the congressional

desire to enforce the FDCPA through private actions. *Tolentino v. Friedman*, 46 F. 3d 645 (7th Cir. 1995).

### A. The Experience Of The Attorneys At Weisberg & Meyers Provides Support For The Hourly Rates Requested.

Plaintiff's attorneys' experience is summarized in the attorney profiles. (See Exhibit 32: Attorney Profiles). Plaintiff's attorneys' experience is further supported by the affidavits of Weisberg & Meyers attorneys. (See Exhibit 33: Affidavits of Weisberg and Meyers Attorneys).

### B. The Rates Sought By Weisberg & Meyers Are Reasonable Compared With The 2007 Consumer Law Attorney Fee Survey Of Prevailing Market Rates.

In the fall of 2007, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection, grouped by "attorney's years in practice, location of practice, and size of firm." (See Exhibit 34: 2007 Consumer Law Attorney Fee Survey). Page 7 of the attached survey shows that the average billing rate for firms with more than 5 attorneys in Oklahoma is $225 per hour. This is comparable to the rates sought by Plaintiff's attorneys.

### C. The Rates Sought By Weisberg & Meyers Are Reasonable Compared With The United States Attorney's Office's "Laffey Matrix."

The attorneys' fee rates requested by Plaintiff through Plaintiff's attorneys' Statement of Services are commensurate with the prevailing rates for attorneys that practice federal law. This case was filed pursuant to a federal remedial statute, the FDCPA, so it is fitting to compare rates charged by other attorneys practicing federal law

to determine an appropriate rate. *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983) (wherein the court compared the rates of attorneys practicing under federal claims with fee-shifting provisions to reach a hybrid rate).

The United States Attorney's Office, Civil Division, took the *Laffey* court's analysis one step further, creating the "Laffey Matix" to reflect how inflation has changed billing rates over the years. The "Laffey Matrix" clearly demonstrates that the rates sought by Plaintiff's attorneys herein are reasonable compared to recognized rates for attorneys' with similar experience. The "Laffey Matrix" is incorporated into this Fee Petition in its entirety:[3]



**Civil Division**

**LAFFEY MATRIX 2003-2008**

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 |
|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 |

---

[3] This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does *not* apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983).

| | | | | | |
|---|---|---|---|---|---|
| 8-10 years | 270 | 280 | 290 | 305 | 315 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 |

Based on the reasonable market rates in the "Laffey Matrix," the attached affidavits and attorney profiles, and other authority provided to this Court in Plaintiff's Petition for Attorney's fees, the hourly rates sought by Plaintiff's attorneys are reasonable and should be awarded in full.

### D. The Affidavits Of Numerous Consumer Protection Attorneys Provide Support For The Hourly Rates And Time Requested By Plaintiff.

Numerous consumer protection attorneys familiar with the claims as brought herein have reviewed the hourly rates and time entries of Plaintiff's attorneys. These attorneys have each attested that the rates and time incurred by Plaintiff's attorneys are reasonable. (See Exhibit 35: Combined Affidavits of Consumer Advocates). These consumer protection attorneys have a wealth of experience in trial and appellate advocacy, and have displayed this expertise within the legal community by teaching continuing legal education courses and seminars, and by publishing articles in various legal journals. These advocates have cumulatively represented thousands of consumers throughout the nation and have handled numerous consumer actions including claims brought pursuant to the FDCPA. Therefore, based on the experience of these attorneys in

the area of consumer protection litigation, it is clear that they have obtained the experience and qualifications necessary to present their opinions to this Court as to the reasonableness of Plaintiff's attorneys' fees.

### E. It Is Defendant's Burden To Present Evidence Contesting Plaintiff's Attorneys' Reasonable Rates.

"A party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990) (awarding $5,500,000 in fees on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992. The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *See e.g, United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) (fee opponent must submit evidence). "[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant." *Brinker v. Giuffrida*, 798 F.2d 661 (3d Cir. 1986).

## VIII. DEFENDANT'S VIGOROUS DEFENSE RESULTED IN THE PROLIFERATION OF ATTORNEY'S FEES AND COSTS.

Courts have repeatedly admonished that defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by Plaintiff in response." *See Copeland v Marshall*, 641 F.2d 880, 904 (D.C. Cir 1980) (en banc), citing *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Ci.r 1977) ("Obviously, the more stubborn the opposition, the more time would be required" by the other side). Courts recognize that, while a vigorous defense is certainly permitted, the result of such will be to increase the

attorneys' fees awarded against the defendant if the plaintiff prevails.

> In this instance, the discrepancy is explained largely by what we have referred to as the "Stalingrad defense." While this hard-nosed approach to litigation may be viewed as effective trench warfare, it must be pointed out that such tactics have a significant downside. The defendants suffer the adverse effects of that downside here. There is a corollary to the duty to defend to the utmost– the duty to take care to resolve litigation on terms that are, overall, the most favorable to a lawyer's client. Although tension exists between the two duties, they apply concurrently. When attorneys blindly pursue the former, their chosen course of action may sometimes prove to be at the expense of the latter.

*Lipsett v. Blanco*, 975 F.2d 934, 941 (1st Cir. 1992); *see also Henson v. Columbus Bank & Trust Company*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("CB & T has spiritedly contested Henson's claims at every stage . . . . While CB & T is entitled to contest vigorously Henson's claims, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended."); *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981) ("Although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.").

By tenaciously defending this case, causing delays in the litigation process, and refusing to compensate Plaintiff for the full amount of her attorney's fees, Defendant should be stopped from complaining about the number of hours Plaintiff's attorneys were required to expend herein.

## IX. PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.

Pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d), Plaintiff seeks $425.00 in recoverable litigation costs incurred in relation to this matter. (See Exhibit: 36: Affidavit of Alex D. Weisberg).[4]

WHEREFORE, Plaintiff respectfully requests that this Court enter an order awarding Plaintiff, and her counsel, attorneys' fees in the amount of $4,431.50 and costs in the amount of $425.00.

Respectfully submitted this 18th day of August, 2010.

s/ Alex D. Weisberg
Alex D. Weisberg
FBN: 0566551
Attorney for Plaintiff
WEISBERG & MEYERS, LLC
5722 South Flamingo Road, Ste. 656
Cooper City, FL 33330
Telephone: (954) 212-2184
Fax: (866) 577-0963
AWeisberg@AttorneysForConsumers.com

---

[4] Plaintiff has also filed a separate Request for Entry of Bill of Costs. (See Exhibit 37: Request for Entry of Bill of Costs).

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: Jon E. Brightmire jbrightmire@dsda.com; Amanda Thrash athrash@dsda.com.

s/ Alex D. Weisberg
Alex D. Weisberg

# CONSUMER LAW ATTORNEY FEE SURVEY

# 2007

Conducted By

Ronald L. Burdge
Burdge Law Office Co. LPA
2299 Miamisburg Centerville Road
Dayton, OH 45459-3817
Voice: 937.432.9500
Fax: 937.432.9503
Email: Ron@TheLawCoach.com

Copyright 2007 by R.L.Burdge

## Table of Contents

Introduction. .................................................... 1
    Methodology. ................................................ 2
    The Average and the Median: What it Means to You. ............ 2
    Geographic Areas Defined. .................................... 3
    Interpreting the Findings. .................................... 4

Summary Profile of the Typical US Consumer Law Attorney. ............ 5

Regional Table for All Firms. ..................................... 6

Regional Years in Practice Table. ................................. 8
    Atlantic Region Firms. ....................................... 8
    California Region Firms. ..................................... 9
    Florida Region Firms. ........................................ 10
    Mid West Region Firms. ...................................... 11
    New York Region Firms. ...................................... 12
    North East Region Firms. .................................... 13
    Ohio Region Firms. .......................................... 14